946 P.2d 609

Michelle FORBES, Plaintiff–Appellee,

v.

HAWAII CULINARY CORPORATION
and Stanley Monsef, Defendants–
Appellants.

No. 20469.

Intermediate Court of Appeals of Hawai'i.

Sept. 19, 1997.

S.V. (Bud) Quitiquit and Charles M. Heau-kulani, Carlsmith Ball Wichman Case & Ichiki, Kailua–Kona, on the briefs, for defendants-appellants.

John L. Olson, Captain Cook, on the brief, for plaintiff-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

ACOBA, Judge.

We hold that in its January 14, 1997 amended judgment, the district court of the third circuit (the court) correctly determined that Defendants–Appellants Hawaii Culinary Corporation and Stanley Monsef (Monsef) were liable to pay additional rent to Plaintiff–Appellee Michelle Forbes (Forbes), the landlord of the subject commercial premises. However, the case must be remanded because, in addition to inconsistent statements in the judgment concerning the back rent and attorneys' fees awarded Forbes, the court must confirm that any attorneys' fees awarded under Hawai'i Revised Statutes

(HRS) § 607–14 (1993) were calculated on a judgment which included rental payments made during the litigation, HRS § 666–5 (1993), and prejudgment interest. If attorneys' fees were also awarded Forbes under HRS § 666–14 (1993)for obtaining a writ of possession, the court must clarify that such fees did not duplicate fees already awarded under HRS § 607–14. Since the court made a lump sum attorneys' fees award without designating the statutory provision or provisions under which the award was made, it must on remand make such a designation and render findings of fact and conclusions of law in support of its decision.

## I.

On September 1, 1994, Monsef subleased premises from Forbes, the lessee under a master lease with Moon Samashima (Samashima), the lessor and owner of the premises.[1] Monsef operated a restaurant called Island Bistro on the premises.

Paragraph 10 of the sublease provided that if Monsef constructed additional space and thereby expanded the premises, he would pay additional rent "upon completion." This provision stated that:

> Should Sublessee construct additional space by expanding the Premises, with consent as aforesaid, then *upon completion* of such space, Sublessee shall pay rental therefore in the amount of $1.45 (one dollar forty five cents) per square foot per month if such construction is performed during the first year of the term of this Sublease. The rental payable shall increase by five cents per month on each anniversary of this sublease.

(Emphasis added.)

During negotiations, Forbes and Monsef discussed Monsef's desire to partially enclose the open-air lanai on the premises. Paragraph 10, therefore, also provided that Monsef would pay additional rent upon completion of any lanai enclosure:

> Should Sublessee *partially enclose* existing lanai area, with consent as aforesaid,

---

**1.** Defendant–Appellant Stanley Monsef (Monsef) was the sublessee and President of Defendant–

Appellant Hawaii Culinary Corporation, the permitted assignee under the sublease.

then *upon completion* of such space, Sublessee shall pay rental therefore in the amount of $1.00 per square foot per month, increasing by five cents per month on each anniversary of the completion.

(Emphasis added.)

Prior to opening for business on December 19, 1994, Monsef added a walk-in refrigerator to the outside of the restaurant, constructed a concrete foundation upon which the refrigerator rested, and erected a partition wall next to the refrigerator. Access to the refrigerator was gained from inside the restaurant.

At some point, Monsef partially enclosed the lanai.

He also constructed a 22.5 square foot addition to the rear of the premises.

The master lease between Samashima and Forbes described the premises as consisting of approximately 1600 square feet of floor space. However the sublease between Forbes and Monsef described the premises as consisting of approximately 1726 square feet. Monsef testified that he agreed to the 1726 square foot measurement at the time he was negotiating the sublease with Forbes, and only later learned that the master lease between Samashima and Forbes described the premises as consisting of 1600 square feet.

During an inspection of improvements to the building, Samashima became curious about the square footage discrepancy between the master lease and the sublease. Wanting to clarify the situation with Samashima, Forbes measured the entire premises and found the area was 1800 square feet.

On April 4, 1996, Samashima and Forbes entered into a subsequent agreement for additional rent and for amendment of the master lease to indicate that "[t]he base Lease rent area [would] be changed."

After Forbes entered into the amended lease with Samashima, she demanded additional rent in an unspecified amount from Monsef for the refrigerator area, the alleged

"completed" improvements to the lanai as of December 19, 1994, the date of the restaurant's opening, and the 22.5 square foot addition to the rear of the building.

Claiming that the partially enclosed lanai area was not yet "complete" as provided under paragraph 10 of the sublease, and that under the sublease, his rent should never exceed liability for 1726 square feet, Monsef refused to pay additional rent.

In response, on September 19, 1996, Forbes filed a "complaint for summary possession and money damages." The complaint sought "a writ of possession and execution thereon, pursuant to chapter 666, [ (HRS) ]" and payment of additional rent for the "addition" of the refrigerator area, the alleged "completed" lanai, and the 22.5 square foot addition to the rear of the building.

After a one-day bench trial on October 16, 1996, the court filed its written decision on October 31, 1996. It concluded that (1) "the refrigerator addition constitute[d] an 'expansion of the premises' for which 'construction' was necessarily involved," and consequently, rent was due for this expansion from January 1, 1995; (2) "the [partial] lanai enclosure was essentially complete at the time the restaurant opened in December, 1994" and therefore, additional rent was due from January 1, 1995 for the lanai area; (3) the 22.5 square foot addition to the rear of the premises was no longer in dispute, the parties having agreed that additional rent was due for this addition; and (4) by mutual mistake of fact, the original area of the subleased premises stated as 1726 square feet was in error and in fact, the area was 1800 square feet at the time the sublease was executed.[2] The court's October 31, 1996 decision did not mention a writ of possession.

The court ordered that judgment be entered in favor of Forbes for additional rent due from January 1, 1995 through October 1996, with credit to Monsef for partial rent paid during the litigation, and that Forbes be awarded reasonable attorneys' fees and costs.

---

**2.** The court noted, however, that it lacked jurisdiction to reform the contract and thus could not

grant equitable relief on this issue.

On November 14, 1996, Forbes apparently served Monsef with a copy of her proposed judgment.

On November 19, 1996, Forbes's attorney filed a declaration requesting attorneys' fees of $6,801.60.

On December 3, 1996, Monsef filed objections to Forbes's proposed judgment. Monsef objected to a proposed award for back rent of $8,247.34, contending that after deducting Monsef's $5,605.87 partial payment of rent, the rent due through October 1996 was $7,777.97. Monsef also objected to the request for attorneys' fees of $6,801.60, maintaining that under HRS § 607–14 Forbes was entitled to not more than twenty-five per cent of the judgment as attorneys' fees, or $1,944.49. Finally, Monsef objected to any reference to a writ of possession in the judgment because the court's October 31, 1996 decision had not "award[ed] [Forbes] such a writ."

On December 3, 1996, Forbes's attorney filed a declaration in reply to Monsef's objections. The declaration stated that Forbes's claim for judgment was in the amount of $8,777.09; Forbes's request for attorneys' fees should be based on the total amount claimed when suit was filed; and interest due on the rent as of November 30, 1996 was $1,131.59.

On December 3, 1996, Monsef filed a proposed judgment for rent due through October 1996 in the amount of $7,777.97 with credit for payment made, for attorneys' fees in the amount of $1,944.49, and for costs in the amount of $93.33.

On December 3, 1996, Forbes apparently filed a proposed judgment and a proposed "amended judgment" reflecting an award of attorneys' fees for $6,801.60, and the granting of a writ of possession subject to HRS § 666–14.

On January 14, 1997, an amended judgment was filed.[3] The amended judgment's first paragraph reflects that $8,247.34 was awarded for rent though October 1996 "with credit for payment due," and that $6,801.60 was awarded for attorneys' fees. However, the amended judgment's second paragraph inconsistently itemized the awards as follows:

| | | |
|---|---|---|
| 1. | For rent due (after offsets) | $ 8,777.09 |
| 2. | For attorneys fees of | 5,000.00 |
| 3. | For costs of | 93.33 |
| 4. | Pre-judgment interest at 8% | 1,131.59 |

The amended judgment also referred to the issuance of a writ of possession against Monsef "in accordance with [HRS § ] 666–11 ... to be effective upon February 15, 1997 unless [sic] paid in full, plus interest pursuant to [HRS § ] 666–14 ...."

On February 6, 1997, Monsef appealed from the decision and the amended judgment.

Satisfaction of judgment was filed on March 5, 1997 "with the caveat that this case has been appealed and that judgment on appeal may affect this satisfaction.".[4]

There are essentially three points on appeal.

## II.

### A.

First, Monsef argues that the court erred in concluding that under paragraph 10 of the sublease, the addition of the refrigerator area constituted an "expansion of the premises"

---

**3.** Although the record contains an amended judgment signed by the court, it does not contain a judgment signed by the court.

**4.** The fact that judgment was satisfied does not make the controversy moot "[u]nless there [was] some contemporaneous agreement not to appeal, implicit in a compromise of the claim after judgment, and as long as, upon reversal, restitution can be enforced." 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2905, at 525–26 (2d ed.1995). We refer to federal decisions for guidance when interpreting the Hawai'i Rules of Civil Procedure (HRCP) because a federal court's interpretation of the Federal Rules of Civil Procedure is deemed highly persuasive since the HRCP were patterned after the federal rules. *Harada v. Burns*, 50 Haw. 528, 532, 445 P.2d 376, 380 (1968). Payment of the judgment was apparently made by Monsef pursuant to Hawai'i Revised Statutes (HRS) § 666–14 (1993) to prevent a writ of possession from issuing. *See* discussion *infra*. Thus, we conclude that the controversy is not moot, the parties having acknowledged in the satisfaction of judgment that "satisfaction [was] made with the caveat that [the] case ha[d] been appealed and that ... appeal may affect [the] satisfaction."

and that "construction" was involved in the addition.

He asserts that according to the plain and ordinary meaning of the sublease, the term "Premises" referred to in paragraph 10 of the sublease is defined in paragraph 1 of the sublease as "one building having approximately 1726 square feet of floor space." Because the refrigerator was not attached to the building, Monsef viewed the refrigerator as a free-standing unit independent of the building, which did not "expand[ ] the Premises." Monsef refers to various other items such as boxes, iceboxes, and sinks that are situated adjacent to or alongside of the building but which are not considered additions or expansions of the premises and are not claimed for additional rent. Finally, Monsef apparently argues that he personally did not construct the "structure."

## B.

■ We believe the question of whether, under the sublease, the refrigerator unit constituted construction of additional space which expanded the premises is a mixed question of fact and law.

■ Where conclusions of law present mixed questions of fact and law—that is, where conclusions of law are dependent upon the facts and circumstances of a particular case—we review such conclusions of law under the clearly erroneous standard. *AIG Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 629, 851 P.2d 321, 326 (1993); *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 119, 839 P.2d 10, 29, *recon. denied*, 74 Haw. 650, 843 P.2d 144 (1992).

■ It appears that the evidence adduced at trial supports the court's conclusion that the "refrigerator addition constituted an 'expansion of the premises' and that 'construction' was necessarily involved in the expansion." Monsef admitted in his testimony that the addition of the refrigerator area created more space on the inside of the restaurant. Furthermore, Monsef testified that he poured the concrete slab that served as foundation for the refrigerator, and that this constituted "construction for foundation." He

also admitted that he constructed a stub wall next to the freezer.

Under such circumstances we cannot conclude that the court's conclusion was clearly erroneous.

## III.

Second, Monsef argues that the court erred in concluding that the partial enclosure of the lanai was "essentially complete" as of the restaurant's opening in December 1994. He maintains that the court's use of the phrase "essentially complete" is not synonymous with the clear and unambiguous language of the sublease, which provides that additional rent is due "upon completion of such space."

According to Monsef, construction of the enclosure was not completed until October 1996 when he finished construction of a suspended ceiling on the lanai. Although Monsef concedes that the lanai was used to serve patrons, he maintains that it was used only occasionally for that purpose.

In opposition, Forbes testified that the improvements on the lanai were completed by "the end of September and the beginning of December [1994]," and that as of December 19, 1994, patrons were served on the lanai.

Christie Kranz and Mary Fox, employees of Island Bistro, also reported that the lanai was used to serve patrons and was partially enclosed at the time of the restaurant's opening. Contrary to Monsef's testimony that the lanai was used only occasionally, Fox related that the lanai was a "popular area."

■ Under the circumstances, the evidence could support the conclusion that the partial enclosure of the lanai was complete, within the terms of the sublease, when the restaurant opened. Additional rent was due "upon completion of such space." Hence, we cannot conclude that the court's conclusion that the lanai was "essentially complete" when the restaurant opened in December 1994 and therefore additional rent was due from January 1, 1995 was clearly erroneous.

## IV.

In connection with Monsef's third argument, we agree that the amended judgment is "internally inconsistent" and that the case must be remanded to correct the inconsistency between the award of $8,247.34 for rent due and $6,801.60 for attorneys' fees in the amended judgment's first paragraph and the award of $8,777.09 for rent due and $5,000 for attorneys' fees in the amended judgment's second paragraph.[5]

Furthermore, for the reasons set forth in our discussion *infra*, we instruct the court on remand to expressly set forth the grounds for the award of attorneys' fees, and if more than one ground, the specific amount of attorneys' fees granted with respect to each ground.

### A.

Monsef initially argues that an award of attorneys' fees in this case was not supported by any statute, agreement or stipulation. Alternatively, he argues that the court erred in awarding attorneys' fees in excess of that provided by HRS § 607–14.

■ We concur that "attorneys' fees cannot be awarded as damages or costs unless so provided by statute, stipulation, or agreement." *S. Utsunomiya Enters. v. Moomuku Country Club*, 76 Hawai'i 396, 399 n. 3, 879 P.2d 501, 504 n. 3 (1994); *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 618, 575 P.2d 869, 878 (1978). Paragraph 16 of the sublease, however, provided

that "in any litigation" the prevailing party was entitled to "attorneys' fees in a reasonable amount to be fixed by the Court." [6]

### B.

#### 1.

■ The parties do not appear to dispute that HRS § 607–14, which mandates an award of attorneys' fees "in all actions in the nature of assumpsit and in all actions on a ... contract in writing that provides for an attorney's fee," [7] authorized the court to award attorneys' fees for enforcement of the sublease. We agree because "[l]eases are essentially contractual in nature and are reviewed under principles of contract law." *Hi Kai Inv. v. Aloha Futons Beds & Waterbeds, Inc.*, 84 Hawai'i 75, 78, 929 P.2d 88, 91 (1996) (citing *Cho Mark Oriental Food v. K & K Int'l*, 73 Haw. 509, 519, 836 P.2d 1057, 1063 (1992); *Maui Land & Pineapple Co. v. Dillingham Corp.*, 67 Haw. 4, 10, 674 P.2d 390, 394 (1984) (leases should be analyzed under principles of contract law); *Lau v. Bautista*, 61 Haw. 144, 149, 598 P.2d 161, 165 (1979) ("a lease is essentially a contractual relationship"); *Lemle v. Breeden*, 51 Haw. 426, 433, 462 P.2d 470, 475 (1969) (a lease is "more importantly [ ] a contractual relationship")).

■ Because leases are essentially contractual in nature, attorneys' fees in lease disputes are awardable under the "assumpsit" prong and may be awarded under the "contract" prong of HRS § 607–14. This is because as to the first prong, "assumpsit" is

---

5. We urge that trial courts, in the ordinary discharge of their duties, review their judgments to insure that such judgments are internally consistent and, if necessary, supported by sufficient findings to permit review on appeal.

6. Paragraph 16 of the sublease states, in pertinent part:

> ATTORNEYS' FEES. In case any litigation be commenced by either party hereto against the other based upon or in connection with this lease or any provision thereof or the tenancy created hereby, the losing party shall be liable to the prevailing party for all costs and expenses of such litigation, including attorneys' fees in a reasonable amount to be fixed by the Court, and the amount so allowed as attorneys' fees shall be taxed as a part of the costs of such suit.

7. HRS § 607–14 (1993) provides, in pertinent part:

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, *a fee that the court determines to be reasonable....* The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; *provided that this amount shall not exceed twenty-five per cent of the judgment.* (Emphasis added.)

"a common law form of action which allows for the recovery of damages for non-performance of a *contract,* either express or implied, written or verbal, as well as quasi contractual obligations." *Schulz v. Honsador,* 67 Haw. 433, 435, 690 P.2d 279, 281 (1984) (emphasis added). As to the second prong, the sublease, which is contractual in nature, may provide in writing for attorneys' fees to be awarded to the prevailing party in any litigation between the parties.

Hence, attorneys' fees may be awarded under this sublease pursuant to HRS § 607–14 because a lease is "contractual in nature" and HRS § 607–14 authorizes such an award in all "actions in the nature of assumpsit ... or [on] other contract[s] in writing that provide[ ] for an attorney's fee."

### 2.

■ An award of attorneys' fees taxed by the court under HRS § 607–14, however, shall not exceed twenty-five percent of the judgment. *Cf. Hawaiian Trust Co. v. Cowan,* 4 Haw.App. 166, 173, 663 P.2d 634, 639 (1983) (finding that HRS § 607–17, which

was essentially incorporated into HRS § 607–14, as amended by Act 200, § 1, 1993 Haw. Sess. Laws 305, "places a ceiling on the award of attorney's fees of twenty-five percent of the judgment amount, exclusive of costs and attorney's fees, or the amount claimed plus interest, but not to exceed [an amount] deemed reasonable by the court").[8]

Hence, regardless of the rent due, Monsef urges that the amended judgment's award of $5,000 for attorneys' fees exceeds the twenty-five percent ceiling imposed by HRS § 607–14.[9]

### V.

Forbes, however, claims that the attorneys' fees award in excess of an award under HRS § 607–14 is supported by HRS §§ 607–14.5, 666–5, 666–14 and "interest."[10] We examine these claims.

### A.

HRS § 607–14.5 (1993) authorizes attorneys' fees against a party bringing "frivolous" claims or defenses. Forbes alleges

---

**8.** *Thornley v. Sanchez,* 9 Haw.App. 606, 620–21, 857 P.2d 601, 608–09 (1993) detailed the legislative history behind HRS § 607–17:

> In 1959, the legislature extensively revised [HRS § 607–17] to ... reduce the amount of attorney's fees which could be awarded, prohibit the collection of such fees unless collection was provided for by a written instrument, prohibit the practice of pyramiding fees, and apply the cap on attorney's fees to lawsuits brought in both the district and circuit courts. Act 218, § 1, 1959 Haw.Sess.Laws 146. In recommending passage of the bill which was ultimately enacted as Act 218, the House Judiciary Committee stated in pertinent part as follows:
>
> ....
>
> It is the intent of your Committee: (a) that the fee that may be collected as an attorney's fee ... in a contested action shall be no more than twenty-five per cent of the debt; ... (f) that attorney's commission may be allowed but no attorney's ... fee shall be allowed if prior to or at the time the debt was incurred, the debtor did not sign an instrument in writing which provided for the payment of an attorney's ... fee; (g) that the practice of pyramiding fees, i.e. the practice of collecting an attorney's fee ... on a promissory note, the principal amount of which already includes an attorney's ... fee, is prohibited by not allowing the collection of such fee[.]

Hse.Stand.Comm.Rep. No. 103, in 1959 House Journal at 617.

**9.** Monsef argues that if the judgment amount is for $8,247.34, then the award of attorneys' fees under HRS § 607–14 cannot exceed $2,061.84. Similarly, he maintains that if the judgment amount is for $8,777.09, then the award of attorneys' fees cannot exceed $2,194.27.

**10.** Plaintiff–Appellee Michelle Forbes (Forbes) also refers to HRS § 666–7 (1993) which permits the plaintiff suing for summary possession to join other claims with the summary possession action:

> In any action for summary possession begun under this chapter, the plaintiff may join claims for rent, lodging, board, profits, damages, and waste, where these arise out of and refer to the land or premises, irrespective of the amount claimed.
>
> In any such action, whether the ground or cause is nonpayment of rent or otherwise, the plaintiff may join in the action a prayer for accrued rent due, if any, and also for rent, profits, and damages up to the time of judgment, if such is rendered in the plaintiff's favor, without prejudice to such action or ground for summary possession as may be set forth in the complaint.
>
> HRS § 666–7 is not material to our discussion of the attorneys' fees award.

that HRS § 607–14.5 is applicable because Monsef's defenses were frivolous.

A "frivolous" claim or defense justifying an award of attorneys' fees must be manifestly and palpably without merit so as to indicate bad faith on the pleader's part. *Coll v. McCarthy*, 72 Haw. 20, 29, 804 P.2d 881, 887 (1991) (citations omitted). But an award of attorneys' fees under HRS § 607–14.5 is "conditioned upon a finding that the claim or appeal is frivolous." *Morrison–Knudsen Co. v. Makahuena Corp.*, 66 Haw. 663, 672 n. 5, 675 P.2d 760, 767 n. 5 (1983) (citation omitted). The court made no finding to the effect that Monsef's defenses were frivolous. Therefore, Forbes's assertion that she was awarded attorneys' fees under HRS § 607–14.5 is without merit. *Kukui Nuts of Hawaii, Inc. v. R. Baird & Co.*, 6 Haw.App. 431, 437 n. 8, 726 P.2d 268, 272 n. 8 (1986) (noting that where the trial court did not make the specific finding as required by HRS § 607–14.5(b) that the claims were "completely frivolous" and. "totally unsupported by the facts and the law in the civil action," this court cannot from the record supply the finding for the lower court).

Forbes argues that the case should be remanded for such findings. The general rule, however, is that an issue not raised in the lower court will not be considered on appeal, and an appellate court will deviate from this rule only when justice requires. *Kernan v. Tanaka*, 75 Haw. 1, 35, 856 P.2d 1207, 1224 (1993), *cert. denied*, 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994); *Han v. Yang*, 84 Hawai'i 162, 176–77, 931 P.2d 604, 618–19 (App.1997). We see no reason to deviate from this rule.[11]

**B.**

HRS § 666–5[12] permits a landlord to accept rent "during the litigation" "without prejudice to the landlord's legal rights" and "[i]n the event the eviction proceedings of whatever nature are successful any rent so paid shall be construed as damages[.]" Here, by virtue of the court's grant of a writ of possession, although provisional, the eviction proceedings were successful. Because the acceptance of rent is "without prejudice to the landlord's legal rights" and "rent so paid shall be construed as damages," we believe Forbes was entitled to "calculate her attorney's fees ... without deduction for pendente lite [rental] payments" made by Monsef. It is apparently undisputed that Monsef made a partial rental payment after Forbes filed suit.[13] Accordingly, Forbes was entitled to include the partial payment of $5,605.87 as part of the judgment for the purpose of computing her attorneys' fees under HRS § 607–14.[14]

---

**11.** In determining whether justice demands that an appellate court hear an issue that was not raised in the lower court, three factors must be considered: "Whether consideration of the issue requires additional facts; whether the resolution of the question will affect the integrity of the findings of fact of the trial court; and whether the question is of great public import." *Hong v. Kong*, 5 Haw.App. 174, 177, 683 P.2d 833, 837 (1984) (internal quotation marks and citations omitted).

**12.** HRS § 666–5 (1993) states:

**Acceptance of rent during litigation, effect of.** When any legal proceedings are brought by a landlord to evict a tenant, whether by summary possession proceedings or an action in the nature of an action of ejectment or otherwise, *the acceptance of rent by the landlord during the litigation shall not be construed as a recognition of the tenancy and shall be without prejudice to the landlord's legal rights at the inception of the proceedings.*

In the event the eviction proceedings of whatever nature are successful *any rent so paid shall be construed as damages* for withholding the occupancy of the premises involved from the landlord.

(Emphasis added.)

**13.** The reference to a partial rental payment made "without prejudice" in the trial transcript supports Forbes's contention that the $5,605.87 was paid by Monsef after the suit was filed and should be treated as part of the judgment amount for the purpose of calculating her attorneys' fees:

Q. [Forbes's attorney] Now, you have received a partial payment that you received [sic] from [Monsef] *without prejudice* to either one of your sides, either you or to him, in the amount of, what was—what was the total?
A. [Forbes] $5,605.87.

(Emphasis added.)

**14.** While rent paid during the eviction proceedings are "construed as damages[,]" in the absence of more definite language, we do not believe that HRS § 666–5 was intended to bestow upon the landlord a right to additional rental payments which replicates rent already paid by the tenant during the pendency of the litigation.

### C.

#### 1.

HRS § 666–14 (1993) provides that a writ of possession shall be stayed if the person owing the rent pays rent, interest, costs and "a reasonable fee for the plaintiff's attorney" before the writ is issued.[15] Forbes argues that this "reasonable fee" provision allows her to recover attorneys' fees in addition to fees recoverable under HRS § 607–14.

The amended judgment did provide "[t]hat a Writ of Possession against [Monsef] be issued, upon presentation to plaintiff [sic] to the court, in accordance with [HRS § ] 666–11,[16] as amended, to be effective upon February 15, 1997 unless [sic] paid in full, plus interest pursuant to [HRS § ] 666–14...." It appears the amounts owing were paid in full in accordance with HRS § 666–14 and a writ of possession did not issue.

While the court's October 31, 1996 decision made no mention of a writ of possession, a writ was prayed for and the court chose to sign the amended judgment providing for the issuance of a writ of possession from among the competing proposed judgments. We must examine, then, whether an award of attorneys' fees under HRS § 666–14 may be made in addition to the twenty-five percent attorneys' fee award under HRS § 607–14.

#### 2.

■ When construing statutes, "our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Housing Fin. and Dev. Corp. v. Takabuki*, 82 Hawai'i 172, 180, 921 P.2d 92, 100 (1996) (quoting *State v. Wells*, 78 Hawai'i 373, 376, 894 P.2d 70,73. (internal quotation marks and citation omitted), *recon. denied*, 78 Hawai'i 474, 896 P.2d 930 (1995)).

As we have noted, a lease or sublease is contractual in nature.

■ A writ of possession, on the other hand, is a "writ of execution employed to enforce a judgment to recover the possession of land." *Black's Law Dictionary* 1611 (6th ed.1990); *Ah Cook v. Kasaku*, 27 Haw. 362, 365 (1923) (holding that a writ of possession is a court process by which a judgment for possession of premises is executed).

■ Forbes's complaint prayed for summary possession of the premises and for money damages for rent due under the sublease, and therefore included two separate causes of action. "Recover[y of] the possession of land" by a writ of possession and "recovery of damages" in contract are two distinct remedies. A writ of possession under HRS § 666–14 is not "in the nature of an assumpsit" for the purposes of HRS § 607–14. Thus, Forbes was entitled to attorneys' fees incurred in her efforts to obtain a writ of possession beyond the fees to which she was entitled under HRS § 607–14. *Cf. Langaman v. Mike Salta Pontiac, Inc.*, 4 Haw.App. 57, 65–66, 659 P.2d 752, 757–58 (1983) (holding that HRS § 607–14 does not apply to an attorneys' fees award under HRS § 476–19 (1976) "because actions under chapter 476 are not in the nature of an assumpsit and because section 476–19 authorizes the award of reasonable attorney's fees without any arbitrary maximum limitation").[17]

---

15. HRS § 666–14 states:

    **Writ stayed how, in proceedings for nonpayment of rent.** The issuing of the writ of possession shall be stayed in the case of a proceeding for the nonpayment of rent, if the person owing the rent, before the writ is actually issued, pays the rent due and interest thereon at the rate of eight per cent a year and all costs and charges of the proceedings, and all expenses incurred by plaintiff, including a reasonable fee for the plaintiff's attorney.

16. HRS § 666–11 (1993) provides, in pertinent part:

    If it is proved to the satisfaction of the court that the plaintiff is entitled to the possession of the premises, the plaintiff shall have judgment for possession, and for the plaintiff's costs. Execution shall issue accordingly.

17. We note that although HRS chapter 476 deals with trade regulation and practice and is therefore not directly analogous to the case at bar, HRS § 476–19 (1976), like HRS § 666–14, provides for an award of "reasonable attorney's fees":

    In case of failure of the seller or holder to comply with this chapter, the buyer has the right to recover from the seller or holder, as the case may be, an amount equal to the finance charge or ten percent of the cash price if

■ We conclude, then, that under HRS § 666–14, a landlord may, incident to a summary possession action, seek attorneys' fees attributable to the summary possession action which are in addition to any fees recovered under HRS § 607–14.

### 3.

■ An award of attorneys' fees under both HRS § 607–14 and HRS § 666–14, however, should not result in a double recovery of fees. *Cf. Rodrigues v. Chan,* 5 Haw. App. 603, 609, 705 P.2d 67, 72 (1985) (holding *sua sponte* that duplicative award of attorneys' fees must be set aside where landlords recovered attorneys' fees for prevailing against tenants on landlords' complaint, tenants' counterclaims and on tenants' small claims, and one of tenants' counterclaims was identical with the small claims suit). Accordingly, in making awards under HRS §§ 607–14 and 666–14, the trial court must designate the specific amount awarded pursuant to the statute involved. While here a writ was conditionally granted under HRS § 666–14, the judgment is silent on how the court calculated the attorneys' fees award.

### D.

■ Finally, Monsef does not appear to oppose the contention that prejudgment interest is includable in the amended judgment for the purpose of determining attorneys' fees under HRS § 607–14. We conclude that the amount of the judgment upon which attorneys' fees are calculated under HRS § 607–14 should include prejudgment interest. *Cf. Lennen & Newell, Inc. v. Clark Enters.,* 51 Haw. 233, 456 P.2d 231 (1969) (finding that under HRS § 607–17[18] the amount included in calculating attorneys' fees should include the principal amount sued for plus interest). Therefore, on remand the amount of prejudgment interest owing must be treated as part of the judgment in calcu-

lating the amount of attorneys' fees awarded Forbes under HRS § 607–14.

### E.

In summary, we conclude that for purposes of HRS § 607–14, the amended judgment upon which the landlord's attorneys' fees are computed shall include any partial rental payments made by the tenant after suit was filed, *see* HRS § 666–5, and any award of prejudgment interest to the landlord.

We also conclude that the landlord is entitled to additional attorneys' fees incurred for obtaining a writ of possession, *see* HRS § 666–14, provided such fees are not duplicative of the fees awarded the landlord under HRS § 607–14.

Finally, we conclude that a trial court must designate the statutory ground(s) for which attorneys' fees are awarded and the specific amounts awarded with respect to each ground, to guard against duplicative awards of attorneys' fees and to permit effective review of the awards by the appellate court in the event of an appeal. Since the court here made a lump sum attorneys' fees award and failed to designate the ground(s) for the award, we must remand to the court with instructions to make such a designation. *Cf. Rodrigues v. State,* 52 Haw. 156, 472 P.2d 509 (1970) (indicating that, although award of lump sum for different claims is not reversible error, failure to state amount awarded for each claim makes it impossible for the reviewing court, absent other evidence in the record, to modify such an award when it is determined on appeal that error was committed).

### VI.

For the foregoing reasons, the court's findings in favor of Forbes and against Monsef are affirmed, but the amount of rent due and attorneys' fees awarded in the January 14,

---

no finance charge is specified in the contract or supplementary statement, whichever is the greater, *plus reasonable attorney's fees.* (Emphasis added.)

18. HRS § 607–17 was repealed in 1993. 1993 Haw. Sess. L. Act 200, § 2, at 306. However,

§ 1 of Act 200 substantially incorporated the substance of HRS § 607–17 into HRS § 607–14. Therefore, case law interpreting HRS § 607–17 is relevant in determining whether prejudgment interest is included in the amount of judgment upon which attorneys' fees are calculated pursuant to HRS § 607–14.

1997 amended judgment are vacated and the case remanded for further proceedings in compliance with this opinion.