LAW LIBRARY

2010 JAN -8 AM 9:00

JOHN R. KIKUMOTO
CLERK APPELLATE COURTS
STATE OF HAWAI'I

FILED

NO. 28501

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


RICHARD MARVIN, III and AMY MARVIN, individually
and as Next Friend of IVY MAE MARVIN, SADIE MARVIN,
SAVANNAH MARVIN, and ANABELLE MARVIN, minors; WYLIE HURD;
NICHOLAS FRED MARVIN, individually and as Next Friend
of ALANA MARVIN; AARON MARVIN; BARBARA NELSON;
JEFFREY McBRIDE; MARETA ZIMMERMAN, individually and
as Next Friend of TEVA DEXTER and LIKO McBRIDE, minors,
Plaintiffs-Appellees,
v.
JAMES PFLUEGER, individually and in his
representative capacity; PFLUEGER PROPERTIES;
PILA'A 400, LLC; and DOES 1 through ·10,
Defendants-Appellants

AND

JAMES PFLUEGER; PFLUEGER PROPERTIES; and PILA'A 400, LLC,
Counterclaimants-Appellants,
v.
RICHARD MARVIN, III; AMY MARVIN; NICHOLAS FRED
MARVIN; and JEFFREY McBRIDE,
Counterclaim Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(Civil No. 02-1-0068)


MEMORANDUM OPINION
(By:  Foley, Presiding J., Circuit Judges McKenna
and Lee in place of Nakamura, C.J., Fujise and
Leonard, JJ., all recused)


Defendants/Counterclaim Plaintiffs-Appellants James
Pflueger (Pflueger), Pflueger Properties, and Pila'a 400, LLC
(Pila'a 400) (collectively, Defendants) appeal from the Final
Judgment entered on March 20, 2007 in the Circuit Court of the
Fifth Circuit[1] (circuit court).  The circuit court entered
judgment in favor of

(1)  Plaintiffs Richard Marvin, III (R. Marvin) and Amy
Marvin (A. Marvin), individually and as Next Friend of Ivy Mae
Marvin, Sadie Marvin, Savannah Marvin, and Anabelle Marvin,

---

[1]  The Honorable Kathleen N.A. Watanabe presided.

minors; Wylie Hurd; Nicholas Fred Marvin (N. Marvin), individually and as Next Friend of Alana Marvin; Aaron Marvin; Barbara C. Nelson (Nelson), Trustee of the Barbara C. Nelson Family Trust dated 12/15/91 (Nelson Trust) (collectively, the Marvins)[2]; and Jeffrey McBride (McBride) and Mareta Zimmerman, individually and as Next friend of Teva Dexter and Liko McBride, minors (collectively, the McBrides) (the Marvins and McBrides are collectively referred to as Plaintiffs) and against Defendants as to Count VIII (Injunctive Relief) of Plaintiffs' Third Amended Complaint (Third Complaint), consistent with the circuit court's January 4, 2007 "Findings of Fact and Conclusions of Law; Order" (FOF/COL/Order); and

(2)    the Nelson Trust, R. Marvin, and N. Marvin and against Defendants as to Count VII (Kuleana[3] Rights) of the Third Amended Complaint and as to Count 1 (Declaratory Relief as to Access) of Defendants' Third Amended Counterclaim (Third Counterclaim), consistent with the FOF/COL/Order.

The circuit court dismissed as a matter of law Count VI (Prescriptive Easement) of the Third Complaint and Defendants' claim for trespass as to Plaintiffs' water line and catchment system, as alleged in Count 4 (Trespass) of the Third Counterclaim.  The circuit court, pursuant to a settlement by the parties and the Stipulation for Partial Dismissal with Prejudice of Plaintiffs' Claims and Defendants' Counterclaims and Order, entered on January 29, 2007, dismissed with prejudice (a) Counts I, II, III, IV, and V of the Third Complaint; (b) Counts 2, 3, 5, 6, 7, 8, and 9 of the Third Counterclaim; and (c) Defendants' counterclaim for damages for past trespasses as alleged in Count 4 of the Third Counterclaim.  The circuit court further dismissed

---

[2]  The Third Complaint states that R. Marvin and A. Marvin brought the action individually and on behalf of their minor children, Ivy Mae Marvin, Sadie Marvin, Savannah Marvin, and Anabelle Marvin.  At one time, Nelson was known as Barbara Marvin.  The Third Complaint does not indicate what connection Wylie Hurd has to the Marvin family; however, because he is listed among the Marvins, we include him as one of the Marvins.

[3]  A kuleana is a "small piece of property, as within an ahupua'a.  Mary Kawena Pukui & Samuel H. Elbert, Hawaiian Dictionary 179 (1986).  An ahupua'a is a "land division usually extending from the uplands to the sea."  Id. at 9.

all other claims and causes of action alleged in the Third Complaint and Third Counterclaim.

The Final Judgment incorporated by reference the FOF/COL/Order, in which the circuit court

(1) granted Plaintiffs' Motion For Partial Summary Judgment Re: Easement By Necessity and/or Order Issuing Preliminary Injunction (MPSJ Re Easement) and ordered that Defendants were enjoined and restrained from interfering with, blocking, or otherwise making Plaintiffs' access unreasonable or unsafe;

(2) granted Plaintiffs' Motion for Ex Parte Temporary Restraining Order (TRO Motion Re Water) and ordered that Defendants were enjoined and restrained from interfering with, dismantling, damaging and/or destroying Plaintiffs' water system that brings water from the western stream and spring to Plaintiffs' kuleana; and

(3) ordered that Plaintiffs shall present to Pila'a 400, and Pila'a 400 shall execute, a recordable Non Exclusive Grant of Easement in favor of Plaintiffs.

On appeal, Defendants contend the circuit court erred in

(A) granting the MPSJ Re Easement because (1) there are "non-parties[4] whose interests in their adjacent real property (the other part of a partitioned kuleana) could be affected by the resulting order," (2) the Marvins' "property is not landlocked and is not a kuleana," (3) the Marvins' "property rights were determined in a prior real property partition action," (4) there is an "absence of evidence establishing ancient and historic use," and (5) the Marvins' deeds "expressly note a 'lack of an easement for access to Kuhio Highway (a public road)'";

---

[4] By non-parties, Defendants mean "the Huddys." The circuit court and both parties refer to "the Huddys" and the "Huddy family." However, the sole owner of the Huddy parcel is Heidi K. Huddy-Yamamoto, as Trustee of the Heidi K. Huddy-Yamamoto Self-trusteed Revocable Trust (Huddy-Yamamoto Trust). For the sake of simplicity, when we summarize the court's findings and the parties' arguments, we will refer to Huddy-Yamamoto rather than "the Huddys" or the "Huddy family."

(B) "requiring [Defendants] to execute a recordable Non Exclusive Grant of Easement in favor of [the Marvins] where no such recorded easement is required under HRS [§] 7-1" (2009 Repl.);

(C) "granting [the Marvins'] motion for summary judgment on [the Marvins'] claim for entitlement to water rights";

(D) "dismissing [Defendants'] claim for trespass against [the Marvins]"; and

(E) "granting [the Marvins'] motion for summary judgment over [Defendants'] argument that the claims were barred by laches."

## I.  BACKGROUND

The Marvins' land (Marvin parcel or Lot 1-B) comprises two-thirds of the Haena kuleana, which is located within the Pila‘a ahupua‘a.  The other one-third portion of the Haena kuleana is owned by the Huddy-Yamamoto Trust (Huddy parcel or Lot 1-A).[5] The Haena kuleana is landlocked.

The Marvin parcel is abutted on its western and northern boundaries by Pila‘a 400's property (Defendants' property[6]), which is also part of the Pila‘a ahupua‘a; on its southern boundary by the Huddy parcel; and on its eastern boundary by the beach and ocean.

At the time of the original Land Commission Award to Haena, the Haena kuleana was a single parcel.  In 1965, the Haena kuleana was partitioned and Lot 1-A was "alloted in fee simple to

---

[5] During the Great Mahele of 1848, Kamehameha III divided communal land in Hawai‘i into three roughly equal parts and distributed one part each to himself, his chiefs (land given to the chiefs was called ahupua‘a), and the government.  As part of the Kuleana Act of 1850, people living on and cultivating the land could make a claim for that land.  The plot they were awarded was called a "kuleana."  Pila‘a is an ahupua‘a.  Within Pila‘a are various kuleana including, but not limited to, the Haena kuleana, of which the Marvin parcel and the Huddy parcel are the only parts.  The kuleana is referred to as the Haena kuleana because it was originally awarded to Haena by Kamehameha IV, in fee simple, in a Land Commission Award on December 7, 1857.

[6] Defendants' property was originally owned by the Mary N. Lucas Trust. In 1997, the Mary N. Lucas Trust conveyed the property to Pflueger Properties via a Limited Waranty Deed.  In 2001, Pflueger Properties conveyed the property to Pila‘a 400 via a warranty deed.  According to Plaintiffs' Third Complaint, Pflueger was the Trustee of the James Pflueger Trust, which was the general partner of Pflueger Properties.

William L.F. Huddy [(William Huddy)] and Elisabeth[7] S. Huddy [(Elisabeth Huddy)], as tenants by the entirety" and Lot 1-B was "alloted in fee simple to Helen Louise Huntley [(Huntley)] and Jahne K. Hupy [(Hupy)], as joint tenants."

Huntley and Hupy sold (in 1965) and deeded (in 1988) Lot 1-B to Richard Marvin, Jr. (Marvin, Jr.) and Nelson. The deed conveying Lot 1-B to Marvin, Jr. and Nelson provides: "Note: Lack of an easement for access to Kuhio Highway (a public road)." In 1996, Marvin, Jr. conveyed his 50% interest to his sons, R. Marvin and N. Marvin. The deed from Marvin, Jr. to his sons provides: "SUBJECT, HOWEVER, to the following: . . . (2) Lack of an easement for access to Kuhio Highway (a public road)." In 1996, Nelson transferred her 50% interest via quitclaim deed to the Nelson Trust. That quitclaim deed provides: "Note: Lack of an easement for access to Kuhio Highway (a public road)."

In 1995, title to the Huddy parcel was transferred to the William L.F. Huddy Revocable Living Trust and the Elisabeth S. Huddy Revocable Living Trust via a quitclaim deed. In 2004, Elisabeth Huddy, as the surviving spouse of William Huddy, conveyed her 100% interest in the Huddy parcel to Huddy-Yamamoto via a quitclaim deed.

To access Lots 1-A and 1-B from Kuhio Highway, the public road, the owners and tenants of the kuleana must cross through Defendants' property. Historically, various routes have been used for this purpose.

A.   Underlying Complaints

On April 12, 2002, Plaintiffs[8] filed a Complaint for Damages and Injunctive Relief (original Complaint) against Pflueger and Pflueger Properties. Plaintiffs asserted the following, in relevant part:

_____

[7] In the FOF/COL/Order, the circuit court refers alternatively to "Elisabeth Huddy" and "Elizabeth Huddy." In the "Order Confirming Report of Commissioner and Ordering Partition Accordingly" to which the court refers in FOF 23, her name is spelled "Elizabeth." In the Quitclaim Deed conveying the Huddy parcel to William and Elisabeth's trusts, her name is spelled "Elisabeth." For the sake of simplicity, we refer to her as "Elisabeth."

[8] The original and amended complaints were filed on behalf of all Plaintiffs.

(1)  The Marvin property "is a kuleana adjacent to the [Defendants'[9]] property and is located on the beach at Pila'a, below the [Defendants'] property.  The [Defendants'] property is located on a bluff above the beach at Pila'a."

(2)  R. Marvin and N. Marvin resided with their families in Pila'a, and R. Marvin, N. Marvin, and Nelson had an interest in [Defendants'] property because "the only access road to and from their real property at Pila'a Bay is through [Defendants'] property."

(3)  "Several months after [Defendants' property] was granted preliminary subdivision approval, [Pflueger] . . . blocked the [Marvins'] access road to and from their Pila'a residence."

(4)  Pflueger represented that he "needed to 're-route' the [Marvins'] access road so that it would not run through his subdivision."

(5)  In the summer of 2001, Pflueger proceeded to re-reroute the Marvin access route by various means.

(6)  The re-routed access road was inadequate for the purposes of ingress and egress.

(7)  The Marvins asked Defendants to remedy the problems with the access road, but Defendants failed and/or refused to make the new road safe or restore the former access road.

The original Complaint alleged negligence, loss of quiet enjoyment, intentional infliction of emotional distress, trespass, and nuisance.  Plaintiffs sought general, special, and punitive damages; preliminary and permanent injunctive relief; and reasonable attorney's fees, costs, and interest.  In addition to requesting preliminary and permanent injunctions with regard to the access road and other matters, Plaintiffs requested an

---

[9] Plaintiffs added Pila'a 400 as a defendant in their First Amended Complaint.  For the sake of simplicity, we include Pila'a 400 in the category of "Defendants" in our summary of the original complaint.  The First Amended Complaint is otherwise similar in all relevant respects to the original Complaint.

injunction preventing Pflueger from "diverting or in any way interfering with [Plaintiffs'] water."

On May 7, 2002, Defendants filed their answer, in which they generally denied the allegations made in the complaint.

On September 17, 2002, Plaintiffs filed their First Amended Complaint, in which they added Pila'a 400 as an additional defendant.

On January 9, 2003, Plaintiffs filed their Second Amended Complaint, in which Plaintiffs asserted all of the allegations contained in the original Complaint and, for the first time, punitive damages (Count VI), quiet title to prescriptive easement (Count VII), and violation of kuleana rights (Count VIII).  Count VIII provides:

COUNT VIII

VIOLATION OF KULEANA RIGHTS

. . . .

90.  As owners of a kuleana parcel under Land Court Award No. 6527, Plaintiffs Marvin are entitled to all benefits and protections of Hawaii law regarding kuleana[]. Such rights include reasonable and convenient access for the normal use of their property.

91.  Plaintiffs' kuleana is taro land which has historically enjoyed abundant water from the stream located to the west of the kuleana.  Plaintiffs are entitled to water rights in and to and across Defendants' property based upon ancient use, prescriptive rights, and necessity, pursuant to HRS 7-1.

92.  Plaintiffs desire to have their kuleana rights affirmed, specifically located and quantified, and rendered a matter of public record.

93.  Plaintiffs and their predecessors have made consistent use of multiple alternate access routes over the past century.  On information and belief, these routes have passed over the land of Defendants and third party kuleana owners.

94.  The uses by Plaintiffs of access over Defendants' lands have been consistent throughout the terms of ownership by Plaintiffs and their predecessors for generations.

95.  As a result of Plaintiffs' ownership of a kuleana, they claim ownership of easement(s) over Defendants' property, as an interest in Defendants' property.

On March 3, 2003, Defendants filed their answer to the Second Amended Complaint.  As their "Eighteenth Defense,"

Defendants asserted that "Plaintiffs have failed to name indispensable parties to this action."

On May 8, 2006, Plaintiffs filed their Third Complaint. In Count III (intentional infliction of emotional distress), Plaintiffs alleged that Defendants had engaged in a course of conduct intended to harass, annoy, and inflict emotional distress upon the Marvins by, among other things, "threatening to cut off the MARVIN's water access."

**B.    Plaintiffs' Motions**

**1.    TRO Motion Re Water**

On May 30, 2006, Plaintiffs filed their TRO Motion Re Water,[10] in which they moved ex parte

> for a Temporary Restraining Order [(TRO)] restraining and enjoining the Defendants, their employees, agents, assigns, lessees, sublesses [sic] and any person(s) who claim an interest in [Defendants' property] . . . from damaging, dismantling, destroying or otherwise interfering with Plaintiffs' water line and holding tank that are Plaintiffs' sole source of water to their kuleana at Pila'a . . . until a hearing can be held on the merits of Plaintiffs' claims herein.

Plaintiffs argued the following. When the Marvin family purchased their parcel over 40 years prior, an irrigation ditch brought water from a stream on Defendants' property, across the western boundary between Defendants' property and the Marvin parcel, and onto the Marvin parcel. The stream was and traditionally had been the only source of fresh water for the Haena kuleana. In 1970, when R. Marvin started living on the Marvin parcel, the irrigation ditch was filled with sediment, so R. Marvin installed PVC pipes in the ditch to carry the water from the stream to the Marvin parcel. At the time the TRO Motion Re Water was filed, the stream water running through the PVC pipe was Plaintiffs' only source of fresh water for use at the Marvin parcel, and without the water, the Marvin family could no longer continue residing there. Plaintiffs reasserted that the Marvin parcel was entitled to water under Hawai'i law.

Plaintiffs also asserted that their attorney had received a letter from an attorney purporting to represent

---

[10]   The TRO Re Water was filed on behalf of all Plaintiffs.

Pflueger employees, demanding that the Marvins remove their holding tank and water pipe from the stream or risk removal of such by said Pflueger employees. Plaintiffs argued that they would suffer irreparable injury unless the circuit court granted their TRO Motion Re Water.

On June 5, 2006, Defendants filed a memorandum in opposition. Defendants argued that Plaintiffs had not established a prima facie water rights claim; the Marvins' claim to water rights did not give the Marvins a legal basis to install and maintain an artificial stream diversion system on Defendants' property; and the Marvins could not install and maintain an artificial stream diversion system without a permit from the State of Hawai'i Commission on Water Resource Management. Defendants did not argue that Plaintiffs had failed to join a necessary or indispensable party to the action.

On June 7, 2006, Plaintiffs filed a reply memorandum.

On May 30, 2006, the circuit court filed an order granting the TRO Motion Re Water.

## 2. MPSJ Re Easement

On June 6, 2006, Plaintiffs filed the MPSJ Motion Re Easement,[11] in which they requested summary judgment on their claim to an easement by necessity. Plaintiffs asserted that "[a]s owners of an ancient kuleana that is landlocked, Plaintiffs' entitlement to an easement by necessity is derived not only from an expressed reservation contained in the Defendant's [sic] grant, but also from case law and statutory law governing landlords' title subject to tenants' or kuleana owners' use." Plaintiffs additionally asked the circuit court "to enter a preliminary injunction against the Defendants to prevent them from interfering with Plaintiffs' access."

On June 19, 2006, Defendants filed a memorandum in opposition. Defendants argued that based on the existence of material issues of fact, Plaintiffs were not entitled to summary judgment on their easement by necessity claim; an easement by

---

[11] The MPSJ Re Easement was filed on behalf of only R. Marvin, N. Marvin, and Nelson. For the sake of simplicity, we state that it was filed by Plaintiffs.

necessity is limited to ingress and egress and must not impose an unreasonable burden on the servient landowner; an owner of an easement by necessity is responsible for maintenance and repair of the access road; and based on the existing court order, Plaintiffs were not entitled to injunctive relief. Defendants did not assert that Plaintiffs had failed to join a necessary or indispensable party to the action.

On June 23, 2006, Plaintiffs filed a reply memorandum.

On August 9, 2006, a four-day evidentiary hearing commenced on the MPSJ Re Easement and TRO Motion Re Water (evidentiary hearing). Numerous witnesses testified regarding, among other things, a kuleana's entitlement to an access road and water; a prior lawsuit over access through Defendants' property to various kuleana, in which William Huddy and R. Marvin had participated as plaintiffs (R. Marvin was named without his authorization) and Pflueger had been named as a defendant; traditional access and other access routes to the Marvin parcel; the prospect of re-routing the access road the Marvins currently used; and Defendants' blocking of Marvins' access to Marvins' parcel.

Although she did not participate in the action as a party, Huddy-Yamamoto testified at the evidentiary hearing on behalf of Defendants. As Trustee of the Huddy-Yamamoto Trust, she is the sole owner of the Huddy parcel. At the hearing, Huddy-Yamamoto and Defendants' counsel engaged in the following exchange:

> [Huddy-Yamamoto] I had been told by my father that we were caretakers of the land and that I was to always make it available to my family and friends . . . .
>
> [Defendants' counsel]. Is that what you believe your responsibility is?
>
> A. Absolutely, it's my responsibility.
>
> Q. Do you and your mother want vehicular access to your property, lot 1A?
>
> A. Yes, we do want vehicular access.
>
> Q. You understand you're not a party to this current court proceeding?
>
> A. Yes.

Q. Do you understand that this court proceeding is involving access to lots 1A and 1B?

A. Yes.

Q. Do you want to participate in this process as a party?

A. Yes.

Q. Do you want this Court to decide these issues of access to lots 1A and 1B without your involvement as a party?

A. I want to be involved.

. . . .

Q. . . . [D]o you have access to an attorney?

A. Yes.

Q. And is it your understanding that, and I understand you're not a party to this, that one of the issues that we're dealing with in this evidentiary hearing involves access to the original kuleana, which would be lots 1A and 1B?

A. Yes.

Q. Have you been told that the -- another issue involved in this dispute is water access?

A. Yes.

Q. For lot 1B?

A. Yes.

Q. And do you want water access for -- drinking water for lot 1A?

A. Yes.

Q. Do you have it now?

A. No.

On cross-examination, Huddy-Yamamoto testified that Plaintiffs' counsel had asked if she wanted to participate in this case before the filing of the original Complaint. Huddy-Yamamoto told Plaintiffs' counsel that she did not want to participate and she would "work things out" with Pflueger regarding access to the Huddy parcel, but instead of contacting Pflueger, she went to the planning commission to discuss the matter. Huddy-Yamamoto testified at the evidentiary hearing that the Huddy parcel was being sporadically provided with irrigation water and she preferred to have fresh spring water running to the parcel.

Following the evidentiary hearing and a site inspection, the circuit court issued its FOF/COL/Order on January 4, 2007 and its Final Judgment on March 20, 2007.

On April 17, 2007, Defendants timely filed their notice of appeal.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

"We review the circuit court's grant or denial of summary judgment de novo." Querubin v. Thronas, 107 Hawai'i 48, 56, 109 P.3d 689, 697 (2005) (quoting Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 501, 100 P.3d 60, 71 (2004)). The Hawai'i Supreme Court has often articulated that

> summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Querubin, 107 Hawai'i at 56, 109 P.3d at 697 (quoting Durette, 105 Hawai'i at 501, 100 P.3d at 71).

Hawai'i Rules of Civil Procedure (HRCP) Rule 56(e) provides in relevant part:

> Rule 56. Summary judgment.
>     . . . .
>
>     (e) Form of affidavits; further testimony; defense required. . . . When a motion for summary judgment is made . . . , an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, "[a] party opposing a motion for summary judgment cannot discharge his or her burden by alleging conclusions, 'nor is [the party] entitled to a trial on the basis of a hope that [the party] can produce some evidence at that time.'" Henderson v. Prof'l Coatings Corp., 72 Haw. 387, 401, 819 P.2d 84, 92 (1991)

(quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2727 (1983)).

### B. Injunctive Relief

> Generally, the granting or denying of injunctive relief rests with the sound discretion of the trial court and the trial court's decision will be sustained absent a showing of a manifest abuse of discretion. Abuse of discretion may be found where the trial court lacked jurisdiction to grant the relief, or where the trial court based its decision on an unsound proposition of law.

Sierra Club v. Dep't of Transp., 120 Hawai'i 181, 197, 202 P.3d 1226, 1242, reconsideration denied, 2009 WL 1567327 (2009) (quoting Hawai'i Pub. Employment Relations Bd. v. United Pub. Workers, Local 646, AFSCME, AFL-CIO, 66 Haw. 461, 467, 667 P.2d 783, 788 (1983)).

### C. Equitable Relief

"The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion by issuing a decision that clearly exceeds the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the appellant." Aickin v. Ocean View Invs. Co., Inc., 84 Hawai'i 447, 453, 935 P.2d 992, 998 (1997) (internal quotation marks, citation, and brackets omitted).

### D. Findings of Fact and Conclusions of Law

"In this jurisdiction, a trial court's FOFs [Findings of Fact] are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed." Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and ellipses omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined "substantial evidence" as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."

13

Leslie v. Estate of Tavares, 91 Hawai‘i 394, 399, 984 P.2d 1220, 1225 (1999) (internal quotation marks and citations omitted) (quoting State v. Kotis, 91 Hawai‘i 319, 328, 984 P.2d 78, 87 (1999)).

> A COL [Conclusion of Law] is not binding upon an appellate court and is freely reviewable for its correctness. This court ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Chun, 106 Hawai‘i at 430, 106 P.3d at 353 (internal quotation marks, citations, and brackets in original omitted) (quoting Ponce, 105 Hawai‘i at 453, 99 P.3d at 104).

## III. DISCUSSION

### A. Whether the circuit court should have joined Huddy-Yamamoto

### 1. Applicable FOFs and COL

The FOF/COL/Order provides the following in relevant part:

> 90. [Huddy-Yamamoto] testified that she was asked by Plaintiffs' attorney to participate in the instant lawsuit against the Defendants, but she refused.
>
> . . . .
>
> 92. In 1988, William Huddy participated in a lawsuit against [Pflueger], among other defendants, in a Complaint for Damages and Other Relief in a dispute over road access through Defendants' Pila‘a property to various kuleana.
>
> 93. The lawsuit alleges, among other allegations, that the Defendants, including [Pflueger], "failed to provide any access to the Plaintiff Kuleana Owners parcels" and "that the Defendants acted willfully, intentionally and maliciously in destroying roadways providing access to the Plaintiff Kuleana Owners' properties."
>
> 94. The lawsuit further alleges that despite [TROs] preventing Defendants from destroying the access roads to Plaintiffs' kuleana, Defendants destroyed or blocked access to the existing access roads to the Plaintiffs' kuleana.
>
> 95. The lawsuit also alleges that Defendants installed fence posts and wire fences throughout their property with the intention of fencing livestock upon Defendants' property in order to block access to existing roads to the Plaintiffs' kuleana, including such fences that unnecessarily and unreasonably narrow access to the Plaintiffs' kuleana property and unnecessarily impeded access to their kuleana, in contempt of the [TROs].

96. [R. Marvin] was named as a plaintiff in the 1988 Complaint; however, he had not authorized Plaintiffs' attorneys to include him in the lawsuit.

97. Furthermore, [Pflueger] called [R. Marvin] after the lawsuit was filed and told him that if he would withdraw from the suit, the Marvin family would always be able to get to their property.

98. [R. Marvin] relied on [Pflueger's] representation that the Marvin kuleana would always have access, and withdrew from the lawsuit.

99. There is nothing in the record to suggest the outcome of the Huddy claim for access in the 1988 lawsuit.

100. Access to their kuleana was never in contention between the Marvin family and William Huddy because the Huddy family always had a trail to their house.

101. Neither Elisabeth Huddy or [Huddy-Yamamoto] reside at the Pila'a kuleana.

102. There are no facts in the record to suggest that [Huddy-Yamamoto] will be prejudiced by not participating in the instant lawsuit. Indeed, [she] were asked to participate, and refused. The access [she] currently enjoy[s] is "now improved, and easier access than before."

103. Based on Defendants' witness Bruce Graham's testimony that the Marvin side of the kuleana was the "House Lot" side that the Huddy side of the kuleana was the "lo'i," [Huddy-Yamamoto] is entitled to irrigation water. [Huddy-Yamamoto] testified that she has irrigation water to her kuleana from [Pflueger].

104. There are no facts in the record to suggest that [Huddy-Yamamoto] will be prejudiced by the Plaintiffs' claim to irrigation and drinking water in the instant case.

105. [Huddy-Yamamoto] enjoys access and water to their kuleana and specifically refused to participate in this case.

. . . .

142. Defendants, who now argue that [Huddy-Yamamoto] is an indispensable party with respect to road access, failed to bring [Huddy-Yamamoto] into the instant case when filing their Motion to Establish Temporary Roadway Access in 2003.

(Record references omitted.)

COL 12 provides, "The Court finds that [Huddy-Yamamoto] is not an indispensable party as [she is] not prejudiced by the instant proceeding, and [she] refused to participate in the instant lawsuit."

### 2. Parties' arguments on appeal

Defendants contend the circuit court erred in granting the MPSJ Re Easement where the Marvins failed to join Huddy-

15

Yamamoto, who is an "indispensable" party to this action pursuant to HRCP Rule 19(a) and the court erred as a matter of law in concluding otherwise. Defendants argue that without Huddy-Yamamoto as a party to this action,

> [Defendants] could conceivably be forced to grant an easement to [Huddy-Yamamoto], or [her] successors in interest, in a separate suit, wrongfully burdening [Defendants' property] with two separate rights of access.
>
> Conversely, a court could determine (and rightfully so) that the Haena kuleana is, pursuant to HRS section 7-1, entitled to only one access and, in the event an easement is recorded in favor of the Marvin [parcel], [Huddy-Yamamoto] would be deprived of even indirect access to [her] parcel, particularly in view of the fact that [R. Marvin] stated unequivocally that he is not willing to grant the Huddy parcel a right of access over the Marvin [parcel].

Plaintiffs first respond that because Defendants did not contest FOF 102 in their opening brief, FOF 102 is binding on this court. Furthermore, Plaintiffs argue that Defendants "filed no motion to dismiss, omitted this argument from [their] opposition papers and Answer to Third Amended Complaint and dumped the issue on the Marvins literally on the day of [the evidentiary hearing], which foreclosed them from even filing a written response." Second, Plaintiffs cite to numerous FOFs supporting the circuit court's conclusion that Huddy-Yamamoto was not an indispensable party.[12] Third, Plaintiffs assert that granting the Marvins access by the specified route did not adjudicate or affect Huddy-Yamamoto's rights under HRS § 7-1. Fourth, Plaintiffs argue that Huddy-Yamamoto was asked to join Plaintiffs as a party, but refused to do so, and furthermore,

---

[12] Plaintiffs' answering brief states that

the court properly found that 1) [Huddy-Yamamoto] was asked to participate in the lawsuit and refused (FOF Nos. 90, 102, 105), 2) [Huddy-Yamamoto] appeared and testified at these hearings about access and water (FOF No. 89), 3) [Huddy-Yamamoto's] father [William] Huddy sued Pflueger for access in 1988 and the outcome of that claim is unknown (FOF Nos. 92-99), 4) the Marvins and Huddy-Yamamoto have never disputed each others' access or water rights (FOF No. 100), 5) Huddy-Yamamoto's access was actually improved after the 2001 mudslide and is easier now than ever before (FOF No. 102), 5) [sic] Huddy-Yamamoto does not reside on her kuleana (FOF No. 101), 6) Huddy-Yamamoto has access to Pflueger's irrigation water (FOF No. 103), 7) no facts in the record suggest that Huddy-Yamamoto will be prejudiced by the Marvins' claims to access or water in this case (FOF No. 104), and 8) no facts in the record suggest that Huddy-Yamamoto will be prejudiced by not intervening in this case (FOF No. 102).

Huddy-Yamamoto could have filed a motion to intervene. Fifth, Plaintiffs assert that "neither Pflueger nor [Huddy-Yamamoto] made any attempt to bring [Huddy-Yamamoto] into this case, and the court found *three separate times* that [Huddy-Yamamoto] declined to participate." Additionally, the circuit court granted the Marvins a "non-exclusive easement" that "numerous kuleana owners at Pilaʻa have used and continue to use." Sixth, Plaintiffs argue that "any benefit realizable by [Defendants] from [Huddy-Yamamoto's] joinder was obtained by [Huddy-Yamamoto's] testimony on [Pflueger's] behalf, without the need to make her a party." Seventh, Plaintiffs contend that if Pflueger was concerned about the prejudice to him by Huddy-Yamamoto's absence, he could have brought a third-party complaint against her, but Pflueger did not do so. Eighth, Plaintiffs state that the only case cited by Defendants in their opening brief does not concern HRCP Rule 19.

### 3. Defendants' failure to quote FOFs on appeal

Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(4)(C) states "when the point [on appeal] involves a finding or conclusion of the court or agency, [the points of error shall include] either a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions[.]" HRAP Rule 28(b)(4) also states, however, that "the appellate court, at its option, may notice a plain error not presented." Plaintiffs are correct that Defendants did not quote or refer to an appendix of specific FOFs in their points of error; nevertheless, we review Defendants' arguments for plain error.

### 4. Timing of Defendants' assertion of indispensability

Plaintiffs argue that the Marvins "dumped" the issue of Huddy-Yamamoto's absence from this case as a party "literally on the day of [the evidentiary hearing]." In a position statement filed five days prior to the commencement of the evidentiary hearing, Defendants argued that access rights could not be determined in the absence of Huddy-Yamamoto, who was a "necessary and indispensable" party pursuant to HRCP Rule 19(a). However, that was not the first time Defendants argued that Huddy-Yamamoto

17

should have been joined. In their answer to Plaintiffs' Second Amended Complaint, Defendants maintained in their "Eighteenth Defense" that "Plaintiffs have failed to name indispensable parties to this action." Defendants had no reason to raise this defense earlier because Plaintiffs had not asserted claims based on kuleana rights until Plaintiffs filed the Second Amended Complaint.

### 5. Defendants' failure to join Huddy-Yamamoto; Huddy-Yamamoto's failure to intervene

Plaintiffs contend the circuit court did not err by failing to join Huddy-Yamamoto because Huddy-Yamamoto failed to file a motion to intervene, Pflueger did not attempt to bring Huddy-Yamamoto into this case, and Pflueger failed to bring a third-party complaint against Huddy-Yamamoto. Regardless of the foregoing, the circuit court still could have ordered Huddy-Yamamoto to be joined. See HRCP Rule 19(a) ("If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff"); Lau v. Bautista, 61 Haw. 144, 154, 598 P.2d 161, 168 (1979) ("Under Rule 19(a), if such a person has not been joined, 'the court shall order that he be made a party.'").

### 6. Applicable law regarding joinder

HRCP Rule 19 provides in relevant part:

Rule 19. JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION.

(a) Persons to be joined if feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.

(b) Determination by court whenever joinder not feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The

> factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

This court has explained:

> Pursuant to [HRCP] Rule 19(a)(1), a party must be joined if feasible if relief cannot be afforded among those already parties. Rule 19(a)(2)(A) provides that a person must be joined if feasible if the person has an interest in the subject matter of the action and disposition of the case in his or her absence may impair his or her ability to protect that interest or, under Rule 19(a)(2)(B), leave any of the persons already parties subject to the risk of multiple or inconsistent obligations because of the interest.

Int'l Savings & Loan Ass'n v. Carbonel, 93 Hawai‘i 464, 470, 5 P.3d 454, 460 (App. 2000).

"Where joinder [of a "party to be joined" (necessary party[13]) under HRCP Rule 19(a)] is feasible, the court need not proceed under Rule 19(b) to determine whether to proceed or dismiss for lack of an indispensable party." Lau, 61 Haw. at 154, 598 P.2d at 168. It follows that if it is infeasible to join a necessary party, the court should proceed to Rule 19(b) and apply the factors set forth therein to determine whether that party is indispensable.

This court has explained that in examining the 19(b) factors,

> a court should consider all of the factors and employ a functional balancing approach. Because of the flexibility of the "equity and good conscience" test and the general nature of the factors listed in HRPP [sic] Rule 19(b), whether a particular nonparty described in Rule 19(a) will be regarded as indispensable depends to a considerable degree on the circumstances of each case.

Carbonel, 93 Hawai‘i at 470, 5 P.3d at 460 (quoting GGS Co. v. Masuda, 82 Hawai‘i 96, 105, 919 P.2d 1008, 1017 (App. 1996)).

---

[13] In UFJ Bank Ltd. v. Ieda, 109 Hawai‘i 137, 143, 123 P.3d 1232, 1238 (2005), the Hawai‘i Supreme Court refers to a "party to be joined if feasible" under Rule 19(a) as a "necessary" party.

### 7.    Analysis under HRCP Rule 19(a)

Preliminarily, we note that in the proceedings below and on appeal Defendants argue that the Huddy-Yamamoto is an "indispensable" party to this action, yet Defendants base their argument on HRCP Rule 19(a).  As we have discussed, the determination of whether a party is "indispensable" is made according to 19(b), not 19(a), and if the circuit court determines it is feasible to join a necessary party pursuant to 19(a), the court need not proceed to an "indispensability" analysis under 19(b).  See supra Part III.A.6.

In the FOF/COL/Order, the circuit court does not indicate whether it based its finding that Huddy-Yamamoto was not an indispensable party on HRCP Rule 19(a) or 19(b).  The circuit court merely states that Huddy-Yamamoto was not "indispensable." Given the circuit court's repeated use of the term "indispensable," we are left to infer that the court found that Huddy-Yamamoto was not necessary a party under 19(a) and the court then proceeded to analyze the facts according to 19(b). See UFJ Bank Ltd. v. Ieda, 109 Hawai'i 137, 143, 123 P.3d 1232, 1238 (2005) (brackets in original omitted) (holding that "[a]lthough the circuit court did not expressly make the initial determination that KKLW is a necessary party under HRCP Rule 19(a), we believe that such determination can be logically inferred from its ultimate ruling that 'KKLW is an indispensable party without which the court cannot in equity and good conscience proceed based on the factors outlined in said HRCP Rule 19(b).'").

### a.   Necessary party

Huddy-Yamamoto was a necessary party in this action, pursuant to HRCP Rule 19(a)(2).  According to Rule 19(a)(2), a person should be joined in an action if (1) a person "is subject to service of process" and

> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

        i.    Kuleana's entitlement to easement and
              water

        Preliminarily, we note that the parties presented
arguments below and on appeal regarding the Marvins' rights to a
right of way by necessity and to water.  However, the issue is
whether the kuleana, not any particular part-owner of the
kuleana, enjoys those rights.

        With regard to rights of way, HRS § 7-1 provides in
relevant part that "[t]he people shall . . . have a right to
. . . the right of way."  In Henry v. Ahlo, 9 Haw. 490, 490-91
(Haw. Rep. 1894), Ahlo appealed from the decision of the
Commissioner of Private ways for the District of Koolaupoko,
Island of O'ahu (Commissioner).  Henry was prevented from
entering or exiting his land from a government road because Ahlo
had blocked access to the road with a gate.  Id. at 491.  The
Commissioner decided that Henry was entitled to have a road
running from the government road between two kuleana and
continuing on to Henry's land.  Id.  The Supreme Court of the
Republic of Hawai'i affirmed the Commissioner's decision, holding
the owner of a kuleana has a right of way by necessity from the
kuleana to the nearest government road.  Id.  The supreme court
stated, however, that "the plaintiff could not have a number of
roads; he is only entitled to one."  Id.  In this case, it is
undisputed that the Huddy parcel and the Marvin parcel are parts
of one kuleana.  Pursuant to Henry, the kuleana is entitled to
one right of way by necessity through Defendants' property.[14]

_____

        [14] Defendants allege in their Amended Opening Brief that the Marvin
parcel is not landlocked because it is "bounded by navigable waters."  We
disagree.  Black's Law Dictionary 894 (8th ed. 2004) defines "landlocked" as
"[s]urrounded by land, with no way to get in or out except by crossing the
land of another."  One definition of the term "surround" is "to extend around
the margin or edge of."  Merriam-Webster's Collegiate Dictionary 1183 (10th
ed. 2000).

        While there is some case law stating that land bordering the sea is not
landlocked, see e.g. Murch v. Nash, 861 A.2d 645, 652 (Me. 2004) ("Land
abutting navigable water is generally not entitled to an easement by necessity
over neighboring land."), secondary authority has noted that

        [t]here is a trend in some courts toward a more liberal attitude
        in allowing easements by necessity despite access by water.  It
        has been said that now that travel even for short distances is
                                                          (continued...)

With regard to water rights, the Supreme Court of the Territory of Hawaii stated:

> Whenever it has appeared that a kuleana or perhaps other piece of land was, immediately prior to the grant of an award by the land commission, enjoying the use of water for the cultivation of taro or for garden purposes or for domestic purposes, that land has been held to have had appurtenant to it the right to use the quantity of water which it had been customarily using at the time named. In some instances a mere reference to the land in the award or in the records of the land commission as "taro land" ("aina kalo" or "loi kalo") or as "cultivated land" ("aina mahi") has sufficed to lead to and to support an adjudication that that land was entitled to use water for agricultural purposes. Sometimes the testimony of witnesses who appeared before the land commission in the hearings leading up to the award that the land was taro land or cultivated land, or other statements substantially to that effect, have sufficed to support a similar adjudication.

Territory v. Gay, 31 Haw. 376, 383 (Haw. Terr. 1921). The supreme court further stated that

> [i]f any of the lands were entitled to water by immemorial usage, this right was included in the conveyance as an appurtenance. An easement appurtenant to land will pass by a grant of the land, without mention being made of the easement or the appurtenances. But if lands had no such rights, and no additional grant of water rights was made, it certainly could take nothing by having been a portion of the ahupuaa.

Id. at 386; see also Carter v. Territory, 24 Haw. 47, 54 (Terr. Haw. 1917) (upholding the finding of the Commissioner of Water that kuleana and other lands had appurtenant to them the right to water for irrigation), overruled on other grounds by McBryde Sugar Co. v. Robinson, 54 Haw. 174, 504 P.2d 1330 (1973). Moreover,

> [e]very portion of land, large or small, ahupuaa, or ili or kuleana, upon which people dwelt was, under the ancient Hawaiian system whose retention should, in my opinion, continue unqualifiedly, entitled to drinking water for its human occupants and for their animals and was entitled to

---

[14](...continued)
almost always by motor vehicle, it is not reasonable to require a landlocked owner and those wishing to visit the owner to make the trip by boat.

25 Am. Jur. 2d *Easements and Licenses* § 38 (2d ed. 2004).

Although not specifically addressed by any court in this jurisdiction, it appears that Hawai'i has adopted the more liberal attitude in allowing easement by necessity where land is bordered by water. In Rogers v. Pedro, 3 Haw. App. 136, 138-39, 642 P.2d 549, 551-52 (1982), this court upheld an easement by necessity for a parcel which bordered the sea and did not question whether the property was landlocked.

> water for other domestic purposes. At no time in Hawaii's judicial history has this been denied. <u>Whenever it is proven that people dwelt, at the time of the award of the land commission, upon a piece of land awarded, it will be easily found and adjudicated that piece of land was and is entitled to water for all domestic purposes.</u>

<u>Gay</u>, 31 Haw. at 395 (emphasis added).

The Hawaiʻi Supreme Court has stated that

> [t]he trial court's task, sitting as Commissioner of Private Ways and Water Rights, was to determine as precisely as possible the amount of water that was actually being used for taro cultivation at the time of the Land Commission Awards. The burden of proof was on the person asserting the right.

<u>McBryde Sugar</u>, 54 Haw. at 188-89, 504 P.2d at 1340 (footnote omitted); <u>but see also</u> <u>Carter</u>, 24 Haw. at 59 ("It is very difficult at this late day to show what quantity of water was used upon a particular parcel of land by ancient custom when it first became the subject of private ownership. Where the use of water upon land by ancient custom is shown by satisfactory evidence the right is not to be denied merely because the quantity has not been measured and cannot be proven.")

In the instant case, it is undisputed that the Huddy parcel and Marvin parcel are parts of one kuleana, which may have appurtenant to it a right to water for certain purposes, in a limited amount.

### ii. Huddy-Yamamoto's "interest relating to the subject of the action"

HRCP Rule 19(a)(2) provides in part that "[a] person who is subject to service of process shall be joined as a party in the action if . . . the person claims an interest relating to the subject of the action." At the evidentiary hearing, Huddy-Yamamoto testified that she wanted to participate in this proceeding as a party because she did not want the circuit court to determine the issues of access to the Huddy parcel and the Marvin parcel without her involvement.

As part owner of the kuleana, along with the Marvins, Huddy-Yamamoto has an interest relating to the kuleana's easement. Pursuant to <u>Henry</u>, the kuleana is entitled to only one right of way by necessity. 9 Haw. at 491. Because the Marvins and Huddy-Yamamoto are part owners of the same kuleana, Huddy-

Yamamoto's ability to access her parcel is closely intertwined with the Marvins' claim to an easement to their parcel. Huddy-Yamamoto has an interest in the easements' location and other characteristics because depending on where the easement runs, Huddy-Yamamoto's ability to access her parcel could be impacted. As Defendants argue in their opening brief, Huddy-Yamamoto could "be deprived of even indirect access" to her parcel. At the evidentiary hearing, Huddy-Yamamoto testified that she wanted vehicular access to the Huddy parcel.

Huddy-Yamamoto's ability to access water is also closely intertwined with the Marvins' claim to water rights. Huddy-Yamamoto has an interest in continued access to water. The court's determination regarding the kuleana's historical entitlement to water, if any, including the location of the water source and direction in which the water flows, could greatly impact this interest. Huddy-Yamamoto also has an interest in accessing an adequate amount of water. Because the Marvins and Huddy-Yamamoto share the kuleana, the amount of water being accessed by their respective parcels must be, as precisely as possible, similar to "the amount of water that was actually being used for taro cultivation at the time of the Land Commission Awards." McBryde, 54 Haw. at 188-89, 504 P.2d at 1340. At the evidentiary hearing, Huddy-Yamamoto testified that she wanted the Huddy parcel to have access to drinking water, preferably fresh spring water, rather than the water the parcel was receiving from Pflueger's irrigation lines.

### iii. Huddy-Yamamotos' ability to protect her interest

HRCP Rule 19(a)(2)(A) provides in part that "[a] person who is subject to service of process shall be joined as a party in the action if . . . the person . . . is so situated that the disposition of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest." In this case, Huddy-Yamamoto is "so situated that the disposition of the action" in her absence may "as a practical matter impair or impede" her ability to protect her interests. As of the time of the evidentiary hearing, Huddy-

Yamamoto was traveling to her parcel along an "eastern route" right of way through Defendants' property and obtaining water from Defendants' irrigation lines, both with Defendants' permission only. There is no evidence in the record on appeal that Defendants are legally bound to continue providing Huddy-Yamamoto with the right of way or water. If the circuit court were to determine that (a) Defendants are not required to continue providing Huddy-Yamamoto with a right of way and water and (b) the right of way and water to which the kuleana is entitled are in locations that do not reach the Huddy parcel or the kuleana is not entitled to more water than what flows to the Marvins' parcel, it may "impair or impede" Huddy-Yamamoto's ability protect her interest in accessing her parcel and obtaining an adequate amount of water there.

### iv. Additional obligations to parties already joined

HRCP Rule 19(a)(2)(B) provides that "[a] person who is subject to service of process shall be joined as a party in the action if . . . the person . . . is so situated that the disposition of the action in the person's absence may . . . leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Huddy-Yamamoto's non-joinder in this litigation may leave Defendants "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." For instance, if Huddy-Yamamoto were to remain uninvolved in this case, she could later make claims for, among other things, any one or a combination of the following: the easement should be located elsewhere, the kuleana's water source should be located elsewhere, the kuleana's water should flow along a different path, and/or the kuleana is entitled to a different amount of water. In that case, another judgment might subject Defendants to "double, multiple, or otherwise inconsistent obligations,"

especially considering the kuleana is entitled to only one easement and a limited amount of water.[15]

### b. "Feasibility"

The circuit court found that Huddy-Yamamoto refused to participate in the action:

> 90. [Huddy-Yamamoto] testified that she was asked by Plaintiffs' attorney to participate in the instant lawsuit against the Defendants, but she refused.
>
> . . . .
>
> 102. There are no facts in the record to suggest that [Huddy-Yamamoto] will be prejudiced by not participating in the instant lawsuit. Indeed, [she was] asked to participate, and refused. The access [she] currently enjoy[s] is "now improved, and easier access than before."
>
> . . . .
>
> 105. [Huddy-Yamamoto] enjoys access and water to [the] kuleana and specifically refused to participate in this case.

Likewise, COL 12 provides:

> 12. The Court finds [Huddy-Yamamoto] is not an indispensible party as [she is] not prejudiced by the instant proceeding, and [she] refused to participate in the instant lawsuit.

However, the circuit court did not make any specific findings regarding the "feasibility" of joining Huddy-Yamamoto in the action. See HRCP Rule 19(a) (entitled, "Persons to be joined if feasible"); Lau, 61 Haw. at 154, 598 P.2d at 168 (holding that where joinder of a necessary party is feasible, the court need not proceed under Rule 19(b) to determine whether to proceed or dismiss for lack of an indispensable party). We do not see how it would have been infeasible to join Huddy-Yamamoto. There is

---

[15] The decision the circuit court arrived at in Huddy-Yamamoto's absence underscores this danger. The court found both that (1) Huddy-Yamamoto was not an indispensible party in this case based in part on its finding that "the access [Huddy-Yamamoto] currently enjoy is now improved, and easier access than before" and (2) the Marvins were entitled to an easement by necessity that would allow them "vehicular and pedestrian access along the current route." If the circuit court meant that the kuleana was entitled to only one access road across Defendants' property, the court's failure to join Huddy-Yamamoto impaired or impeded her ability to protect her interest because she may have lost her ability to utilize her current route and may have no alternate route available to her. Alternatively, if the circuit court meant that both Huddy-Yamamoto and the Marvins were entitled to access their respective properties along two separate routes, then Defendants would have been "subject to a substantial risk of incurring double, multiple or inconsistent obligations by reason of the claimed interest" because the finding obligated Defendants to provide two rights of way to one kuleana, contrary to the holding in Henry that a kuleana owner is entitled to only one right of way by necessity. 9 Haw. at 491.

no evidence in the record on appeal that she was not subject to service of process. See HRCP Rule 19(a) ("A person who is subject to service of process shall be joined as a party in the action . . . ."). Even if she refused to participate in the action, Rule 19(a) provides that "[i]f the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff."

### c.  Sufficiency of Huddy-Yamamoto's testimony

Plaintiffs argue that "any benefit realizable by [Defendants] from [Huddy-Yamamoto's] joinder was obtained by [Huddy-Yamamoto's] testimony on [Pflueger's] behalf, without the need to make her a party." However, we refuse to speculate as to what evidence Huddy-Yamamoto might put forth on remand and how the circuit court might weigh it compared to her testimony at the evidentiary hearing.

### d.  Result

FOFs 102 and 104 are clearly erroneous, and the portion of COL 12 stating that Huddy-Yamamoto was not prejudiced by the proceeding is wrong. If it was feasible to join Huddy-Yamamoto in this case, the circuit court plainly erred by not ordering her to be joined.

### 8.  Analysis under HRCP Rule 19(b)

If the circuit court were to find that it is infeasible to join Huddy-Yamamoto in this action, she would be an "indispensible" party pursuant to HRCP Rule 19(b). Rule 19(b) requires the court to consider several factors in determining whether a party is indispensable, including whether the absentee party or an existing party may be prejudiced by a decision, whether relief may be formed so as to lessen or avoid prejudice, and whether a judgment rendered without the absent party will be adequate.

For the reasons we cite in Part III.A.7.a.iii-iv supra of this discussion, Huddy-Yamamoto and Defendants would be prejudiced by the circuit court's decision in this case. With regard to the second and third Rule 19(b) factors, if Huddy-Yamamoto is not joined in this action, the circuit court can offer no relief that would serve to avoid or lessen the prejudice

to Huddy-Yamamoto or Defendants and the judgment would not be adequate without Huddy-Yamamoto's presentation of evidence in support of an easement to the Huddy parcel and the parcel's access to water.

### B.   Remaining arguments

Defendants' remaining arguments are based on the FOF/COL/Order.[16]  Given our holding that the circuit court plainly erred by failing to join Huddy-Yamamoto in this action, we need not address these points because the circuit court's

---

[16]  Defendants also argue the following:

(1)   "The circuit court erred in finding that the Marvin [parcel] was entitled to an easement pursuant to HRS [§] 7-1, because such access is based on ancient and historic use, and the Marvin[s] . . . base their claim on decidedly modern use of [Defendants' property]."

(2)   The Haena kuleana's historical access right is to Lot 1-A (the Huddy Parcel).  The subsequent partition and/or subdivision of a kuleana parcel does not multiply kuleana access rights, thereby creating responding burdens to the servient estate.  The landlocked condition of Lot 1-A that is alleged to create the "necessity" for an easement arose long after the time of the kuleana parcel's severance from the servient estate (Defendants' property) and Lot 1-A is bounded by navigable waters.

(3)   Because the deeds conveying Lot 1-B from Huntley and Hupy explicitly note the lack of an easement, the Marvins waived their claim for one.  The absence in the deeds of an express right to an easement shows that the parties to the deed "intended to deprive the property of those rights of access to the public road."

(4)   The circuit court erred because HRS § 7-1 "does not require the servient estate to execute a recordable easement," and any right of way automatically runs with the land.

(5)   The circuit court erred in granting Plaintiffs' TRO Motion Re Water and entering a TRO enjoining and restraining Defendants from interfering with, dismantling, and/or destroying Plaintiffs' water system that brings water from the western stream and spring to their kuleana because (a) the Marvin parcel has no riparian water rights because under HRS § 7-1, riparian rights to water benefit only land adjoining a natural watercourse, (b) Plaintiffs did not demonstrate that their water rights and use preexisted the Great Mahele, and (c) Plaintiffs did not establish that they are entitled to unlimited amounts of water to supply all three houses (the two Marvin houses and the Huddy-Yamamoto house) on kuleana land.

(6)   Plaintiffs' claim for an easement by necessity pursuant to HRS § 7-1 is barred by laches because "[b]ased on the express language of the three deeds conveying the property to the [Marvins], they and/or their predecessors in interest have been aware for more than forty years that they have no easement across [Defendants' property]."  .

(7)   The circuit court erred in summarily dismissing Defendants claim of trespass because even if the Marvins have rights to access water in the stream and spring pursuant to HRS § 7-1, "that right was not accompanied by the right to construct water diversion systems on another's property."

findings and conclusions would inevitably be revised on remand by Huddy-Yamamoto's presence as a party in this case.

### IV. CONCLUSION

The Final Judgment filed on March 20, 2007 in the Circuit Court of the Fifth Circuit is vacated, and this case is remanded for further proceedings in accordance with this opinion.

DATED: Honolulu, Hawai'i, June 8 , 2010.

William C. McCorriston
(David J. Minkin and
Becky T. Chestnut (McCorriston
Miller Mukai & McKinnon) with
him on the briefs) for
Defendants/Counterclaimants-
Appellants.

Peter Van Name Esser
(Teresa Tico with him on the
brief) for Plaintiffs/
Counterclaim Defendants-
Appellees.

Presiding Judge

Acting Associate Judge

Acting Associate Judge